UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARK GREENE,<br>Plaintiff,<br>v.<br>JULIE WISE, in her official capacity as Director of Elections, King County,<br>Defendant. | CASE NO. 2:26-cv-01601-TL<br><br>ORDER ON MOTION TO DISMISS |

This matter is before the Court on Defendant's Motion to Dismiss. Dkt. No 39. Having considered the motion, Plaintiff's response (Dkt. No. 48),[1] and the relevant record,[2] the Court GRANTS the motion and dismisses this action.

//

//

[1] Plaintiff's response was untimely filed on September 14, 2026. Pursuant to Local Civil Rule 7(d)(4), it should have been received by the Court on or before September 10, 2026. As Defendant has not asked the Court to strike the untimely response, the Court has considered Plaintiff's arguments in full.

[2] Defendant did not file a reply brief and submitted her motion without oral argument. Dkt. No. 39 at 1. Plaintiff did not request oral argument. Dkt. No. 48 at 1. The Court finds oral argument unnecessary. *See* LCR 7(b)(4).

# I. Background

## A. Procedural History

On May 12, 2026, Plaintiff Mark Greene filed an application to proceed *in forma pauperis* ("IFP") in this action. Dkt. No. 1. Plaintiff attached a proposed complaint against Defendant Julie Wise, in her official capacity as King County Director of Elections, asserting violation of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and seeking declaratory and injunctive relief. Dkt. No. 1-1. At the same time, Petitioner filed a Motion for a Temporary Restraining Order (TRO). Dkt. No. 2.

The Clerk of Court identified Plaintiff's IFP application as deficient (Dkt. No. 4), and Plaintiff re-filed a compliant application the following day (Dkt. No. 5), along with a new version of the proposed complaint ("First Amended Complaint" or "FAC") (Dkt. No. 5-1) and Motion for TRO (Dkt. No. 6). Plaintiff was granted IFP on May 15, 2026. Dkt. No. 7. The same day, the First Amended Complaint was posted to the docket and a summons was issued. Dkt. Nos. 8, 9.

As recounted in the Court's Order denying Plaintiff's Motion for TRO, Plaintiff originally informed the Court that he did not seek ex parte relief, but he appeared to take no action to serve Defendant (with process *or* with the Motion for TRO) for the next two weeks. *See* Dkt No. 16 (Order on Motion for TRO) at 2–3. On June 1, 2026, Plaintiff made a supplemental filing informing the Court that he wished the Motion for TRO to be considered *ex parte*. Dkt. No. 13. On June 5, 2026, the Court denied the Motion for TRO, both because Plaintiff had not shown that *ex parte* relief was warranted and because Plaintiff had not demonstrated the elements necessary for preliminary injunctive relief. Dkt. No. 16 at 6–12. On the subject of the likelihood of irreparable harm, the Court remarked, "[t]aking Plaintiff's assertions at face value, the threatened harm at issue in the Motion for TRO can yet be avoided by action taken 'at any

point' before July 15, 2026, over two months after the Motion for TRO was filed. Under those circumstances, emergency relief is not appropriate." *Id.* at 11 (citing Dkt. No. 13 at 8).

On June 25, 2026, Petitioner moved for service of process by the United States Marshals Service ("USMS"). Dkt. No 20. On July 8, 2026, the Court granted the motion. Dkt. No. 21. On July 9, 2026, Defendant executed and filed a waiver of service (Dkt. No. 23) and appeared through counsel in this matter (Dkt. No. 24). Service was also completed by USMS on July 14, 2026. Dkt. No. 28 (Return of Service).

Despite his earlier representation that timely relief could be obtained only before July 15, 2026, Petitioner did not file a second motion for TRO once Defendant appeared. Instead, on July 23, 2026, he filed a Motion for Preliminary Injunction. Dkt. No. 29. This motion did not note until August 20, 2026, and sought different relief from the injunctions requested in the FAC. Specifically, it asked the Court to order Defendant "to conduct an 'online primary election' for the office of King County Director of Elections" in which Petitioner was "listed as a candidate on equal terms with the incumbent" and included in an online primary-election voters' guide. *Id.* ¶ 15. In the alternative, Petitioner asked the Court to conduct an online primary in which he could participate as a write-in candidate (with or without inclusion in an online voters' pamphlet) or to order his inclusion as a regular candidate in the general election. *Id.* ¶¶ 21–23.

On August 20, 2026, Defendant filed the instant Motion to Dismiss. Dkt. No. 39.

On or about September 1, 2026, Plaintiff filed a Petition for a Writ of Mandamus with the Ninth Circuit. Dkt. No. 45. On September 18, 2026, the Ninth Circuit denied the petition. Dkt. No. 50. On September 21, 2026, Petitioner informed the Court that on September 17, 2026, before the Court of Appeals had acted, Plaintiff had filed an emergency application for writ of

//

//

mandamus to Justice Elena Kagan of the United States Supreme Court.[3] *See* Dkt. No. 52 at 1. It is unclear from the record in this action whether that application was properly submitted. Since then, Plaintiff appears to have repeatedly supplemented his application to Justice Kagan with additional miscellaneous filings. *See* Dkt. Nos. 51, 53, 54, 55.

**B. The Parties**

Plaintiff Mark Greene desires to participate in King County's primary election as a write-in candidate for the office of Director of Elections. *See* Dkt. No. 8 at 1.

Defendant Julie Wise is the current King County Director of Elections. *Id.* ¶ 9. She is named in her official capacity because she "is responsible for the administration of primary and general elections within King County, including all determinations regarding which offices appear on the primary ballot." *Id.*

**C. The Statutory Scheme**

The office of King County Director of Elections is a countywide nonpartisan office. *Id.* ¶ 10 (citing RCW 29A.52.220). Pursuant to RCW 29A.24.091, the regular candidate filing fee for the office of King County Director of Elections is calculated at one percent of the annual salary of the office, making the filing fee approximately $2,410. *Id.* ¶ 12.

In addition to candidacy via a paid filing fee, there are two alternative pathways to participating as a candidate for elected office in Washington.

The first alternative path is the "petition pathway" created by RCW 29A.24.091(4). *See id.* ¶ 22. The Petition pathway allows an aspiring candidate to satisfy the filing-fee requirement by submitting a petition bearing a number of valid signatures equal to the dollar amount of the filing fee. RCW 29A.24.091(4). For the office of King County Director of Elections, with its

[3] As the Ninth Circuit's assigned "circuit justice," Justice Kagan is responsible for reviewing emergency applications arising within the Circuit for referral to the whole Court.

$2,410.96 filing fee, the petition pathway requires the collection of at least 2,410 valid signatures from registered voters. Dkt. No. 8 ¶ 22.[4]

A candidate may also participate in a Washington election as a "write-in candidate," as opposed to a "regular candidate" whose name is printed on the ballot. *Id.* ¶ 13. In order for write-in votes to be counted, a write-in candidate is required to file a declaration of candidacy by 8 p.m. on the day of the general or primary election. RCW 29A.24.311(1). A person who files a declaration of write-in candidacy more than 18 days before an election is not required to pay a filing fee. WAC 434-215-180. If a write-in candidate who files a timely declaration to participate in a primary election earns more than 1% of the vote and finishes as one of the top two recipients of primary votes, their name is printed on the general election ballot "with full legal standing equal to any other candidate." Dkt. No. 8 ¶ 19; *see* RCW 29A.36.170; WAC 434-262-160. This pathway was utilized successfully by a candidate in the 2022 primary election for the 15th Legislative District. Dkt. No. 8 ¶ 19. However, no primary is held for a nonpartisan office in which two or fewer candidates file during the regular candidate filing window. RCW 29A.52.220(1) ("No primary may be held for any single position in any nonpartisan office if, after the last day allowed for candidates to withdraw, there are no more than two candidates filed for the position.").

**D. The Problem**

Plaintiff, who cannot afford the $2,410 filing fee for regular candidacy, timely filed a declaration of write-in candidacy for the position of King County Director of Elections, designating his candidacy for the primary election. Dkt. No. 8 ¶ 8. However, "[d]uring the regular candidate filing period, two or fewer regular candidates filed for the office of King

[4] "The signatures shall be of voters registered to vote within the jurisdiction of the office for which the candidate is filing." RCW 29A.24.091(4).

County Director of Elections, which would ordinarily trigger the no-primary exemption under RCW 29A.52.220." *Id.* ¶ 15. Indeed, because the King County Director of Elections is a non-partisan office, the Department of Elections determined pursuant to RCW 29A.52.220 that the office of Director of Elections would not be included on the primary ballot "based solely on the number of regular candidates who filed during the regular filing period, without regard to Plaintiff's timely filed Declaration of Write-In Candidacy designating the Primary Election." *Id.* ¶ 16. Plaintiff alleges that "Defendant's determination effectively extinguishe[d] Plaintiff's only financially accessible pathway to meaningful ballot access for this office," and that "Defendant's refusal to hold a primary renders the write-in candidacy alternative pathway wholly illusory as applied to Plaintiff[.]" *Id.* ¶¶ 17, 29.

As for the petition pathway, Plaintiff alleges that it "fails to provide a genuinely accessible alternative in the specific context of King County county office elections," because it requires a candidate to "conduct an effective signature gathering campaign during the months of **January through early May**—a period that in the Pacific Northwest, and in King County specifically, encompasses the coldest, windiest, sometimes the wettest, and most inhospitable months of the year for outdoor signature gathering activities." *Id.* ¶ 23. Plaintiff continues:

> Canvassing neighborhoods, standing outside grocery stores and community centers, and approaching members of the public for signatures is substantially more arduous, less productive, and less accessible during the winter and early spring months than it would be during the warmer months of June, July, or August, when Washington's filing period used to be and could alternatively be scheduled. The practical effect of scheduling the filing deadline in early May is to require petition candidates to conduct their signature drives during precisely the months when such drives are most difficult, most discouraging, and least likely to succeed—particularly for a candidate of limited means who cannot afford paid signature gatherers and must rely entirely on volunteer efforts. A petition requirement of 2,410 signatures gathered under these conditions does not constitute a reasonable alternative means of

> ballot access . . . .

*Id.* This, in Plaintiff's view, makes the petition pathway "Unreasonably Onerous as Applied" to Plaintiff as a potential candidate for the office of Director of Elections, in which capacity he asserts he would be required to collect 2,410 signatures during this four to four-and-a-half-month window in order to appear on the ballot. *Id.*

Between the lack of a 2026 primary for King County Director of Elections and the "onerous" signature gathering requirement, Plaintiff alleges that he "is completely excluded from any primary pathway" (*id.* ¶ 24) by a wealth-based barrier in violation of the First and Fourteenth Amendment of the Constitution, as interpreted by the Supreme Court in election-law cases including *Lubin v. Panish*, 415 U.S. 709 (1974), and *Anderson v. Celebrezze*, 460 U.S. 780 (1983). *Id.* at 4–7. Petitioner seeks a judicial declaration that "declaratory judgment that Defendant's refusal to hold a primary election for the office of King County Director of Elections, as applied to Plaintiff, violates the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983" and "a preliminary and permanent injunction directing Defendant to include the office of King County Director of Elections on the primary election ballot and to count, canvass, and report write-in votes for Plaintiff in accordance with Washington State law[.]" *Id.* at 7.

## II. Legal Standard

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are

insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672. Dismissal is also appropriate "based on the lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Rule 12(b)(6) requires courts to assume the truth of factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (citation modified). Courts "do not, however, accept the 'truth of *legal* conclusions merely because they are cast in the form of factual allegations.'" *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (quoting *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)).

Finally, 28 U.S.C. § 1915 imposes special responsibilities on courts hearing cases brought by plaintiffs proceeding IFP. Per the statute, the Court must dismiss a case *sua sponte* if it determines at any time that an IFP plaintiff fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) applies to all in forma pauperis complaints . . . .").

## III. Discussion

In her Motion to Dismiss, Defendant argues that Plaintiff has failed to state a claim for any violation of his right "to seek public office and to participate meaningfully in the electoral process." Dkt. No. 39 at 4 (quoting Dkt. No. 8 ¶ 21). In response to Plaintiff's allegations regarding the write-in pathway, Defendant argues that she correctly followed state-law procedures for candidates on the primary ballot, and that Plaintiff has "failed to demonstrate any established right under 42 U.S.C. § 1983 that requires [that] a write-in candidate appear on the primary ballot when state law specifically provides that non-partisan positions not appear on the

primary ballot when only one candidate qualified for the ballot." *Id.*[5] As for the petition pathway, Defendant argues that "Plaintiff acknowledges that he . . . failed to gather the required signatures," and that his "argument that the signature requirement is 'unreasonably onerous' due to potential weather conditions is speculative and fails to rise to the level of a constitutional violation." *Id.* at 7.[6]

Petitioner does not respond directly to Defendant's arguments but opposes the motion to dismiss on three grounds. First, he argues that the FAC plausibly states a claim for relief under the pleading standard established in *Iqbal,* 556 U.S. 662, and *Twombly,* 550 U.S. 544. Dkt. No. 48 ¶ 2. Next, he faults Defendant for basing the Motion to Dismiss "*solely* on failure to state a claim" and asserts that her silence on "mootness, lack of standing, or any other threshold ground" is an "implicit[] conce[ssion] that the case presents live constitutional claims capable of meaningful judicial relief[.]" *Id.* ¶ 3 (emphasis added). Third, Petitioner argues that ruling on the motion would be premature "before the Ninth Circuit has acted on Plaintiff's pending Emergency Petition for Writ of Mandamus[.]" *Id.* ¶ 4.

Petitioner's third argument is now moot, because the Ninth Circuit denied his mandamus petition. Dkt. No. 50. His second argument fails as a fundamentally misunderstanding of what it means to fail to state a claim upon which relief may be granted. By moving to dismiss on this ground, Defendant is not "conceding that the case presents live constitutional claims capable of meaningful judicial relief" but doing precisely the opposite: arguing that Plaintiff does not, and perhaps cannot, state facts that, if true, entitle him to any relief before this Court. Whether

---

[5] Defendant's invocation of the term "established right" appears to be a reference to the doctrine of qualified immunity. Qualified immunity is inapplicable here because Defendant is sued only in her official capacity.

[6] Although this subsection of Defendant's brief refers repeatedly to the requirements for appearing on the ballot "as a write[-]in candidate," it is clear that Defendant is actually referring to the requirements of appearing as a *regular* candidate via the petition pathway.

Plaintiff has stated a claim for relief, and whether he could do so if given leave to amend, are therefore the only questions before the Court.

All Plaintiff's claims for relief arise from the premise that his options for participating in the 2026 election as a candidate for King County Director of Elections are functionally inaccessible such that they violate Plaintiff's right, guaranteed by the First and Fourteenth Amendments to the United States Constitution, "to seek public office and to participate meaningfully in the electoral process." Dkt. No. 8 ¶ 21 (citing *Anderson*, 460 U.S. 780; *Burdick v. Takushi,* 504 U.S. 428 (1992)).

In *Lubin v. Panish*, a case on which Plaintiff heavily relies, the Supreme Court held:

> Selection of candidates solely on the basis of ability to pay a fixed fee without providing any alternative means is not reasonably necessary to the accomplishment of the State's legitimate election interests. Accordingly, we hold that in the absence of reasonable alternative means of ballot access, a State may not, consistent with constitutional standards, require from an indigent candidate filing fees he cannot pay.
>
> In so holding, we note that there are obvious and well-known means of testing the 'seriousness' of a candidacy which do not measure the probability of attracting significant voter support solely by the neutral fact of payment of a filing fee. . . . [F]or example, . . . a candidate who establishes that he cannot pay the filing fee required for a place on the primary ballot may be required to demonstrate the 'seriousness' of his candidacy by persuading a substantial number of voters to sign a petition in his behalf. The point, of course, is that ballot access must be genuinely open to all, subject to reasonable requirements.

415 U.S. 709, 718–19 (footnote omitted). While the *Lubin* Court suggested that the option to compete as a write-in candidate, without more, likely fails to offer such a "reasonable alternative means of ballot access" (*see id.* at 719 n.5), it *explicitly* proposed a primary-election petition signed by "a substantial number of voters" as an "obvious and well-known" option that *would* pass constitutional muster. In *Anderson*, the Supreme Court reaffirmed that "[t]he State has the undoubted right to require candidates to make a preliminary showing of *substantial support* in

order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." 460 U.S. at 788 n.9 (emphasis added) (collecting cases).

Despite relying heavily on *Lubin* and *Anderson*, Plaintiff does not acknowledge these holdings or compare the Washington laws he implicitly challenges to the voting laws at issue in *Lubin*, *Anderson*, *Burdick*, or any other case. While Plaintiff may have plausibly pleaded that the write-in pathway does not provide him constitutionally adequate access to candidacy, he has not pleaded any facts that give rise to the inference that the petition pathway available in Washington is more onerous than the *Lubin* Court's suggestion that an indigent primary candidate "may be required to demonstrate the 'seriousness' of his candidacy by persuading a substantial number of voters to sign a petition in his behalf." On the facts pleaded by Plaintiff (assuming signature-gathering were limited to a four-month window at the beginning of the year), Plaintiff and his supporters would only need to average approximately 20 signatures per day to secure his place on the primary ballot. It is not at all apparent that the 2,410-signature requirement for his desired office is distinguishable from *Lubin*'s hypothetical requirement, regardless of the season or weather.

In Plaintiff's brief in opposition to dismissal, he attempts to bolster his allegation that the petition pathway is inaccessible by alleging that he himself mounted a thwarted attempt at winter signature-gathering:

> Plaintiff gathered approximately 1,300 raw signatures through genuine sustained good faith effort during the immediate winter months, among other days, of the King County pre-filing time . . . and still fell short of the required threshold by more than fifty percent despite that genuine effort.

Dkt. No. 48 ¶ 19. Plaintiff argues that the Court is required to accept this "documented real world factual allegation" as true. *Id.* ¶ 20. This argument fails, however, because this allegation appears

nowhere in the FAC. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Olympic Tug & Barge, Inc. v. Lovel Briere LLC*, 668 F. Supp. 3d 1165, 1177 (W.D. Wash. 2023) (quoting *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014)). On the facts actually pleaded, Defendant is correct that Plaintiff's allegation "that the signature requirement is 'unreasonably onerous' due to potential weather conditions is speculative" at best. Dkt. No. 39 at 7.

Even if Plaintiff were given leave to amend his complaint to add facts showing that he "actually attempted the pathway, made a genuine effort, and failed," this alone would not plausibly establish that the petition pathway "is not genuinely accessible within the meaning of *Lubin,"* as Plaintiff claims. Dkt. No. 48 ¶ 20. *Lubin* holds that a state may require candidates to demonstrate "substantial" support in lieu of paying a filing fee, 415 U.S. at 717, and notes with approval that "some candidates have demonstrated that direct contact with thousands of voters by 'walking tours' is a route to success," *id.* at 717. It also instructs that although "[t]he means of testing the seriousness of a given candidacy may be open to debate[,] the fundamental importance of ballots of reasonable size limited to serious candidates with some prospects of public support is not." *Id.* at 715. That some good-faith efforts at candidacy may fail is inherent to any process that involves a meaningful test of public support; it does not, without more, plausibly establish that the test is overly burdensome.

Finally, representations made by Plaintiff in other filings, which are incorporated into his opposition brief by reference, *see* Dkt. No. 48 ¶ 5, demonstrate that his allegations related to signature-collection window are unsupportable. In a supplemental declaration filed in support of the Motion for TRO, Plaintiff explains that, while his signature-gathering efforts in 2026 lasted only "approximately a month," he was able to collect a total of 1,300 signatures "over several years" (Dkt. No. 12 ¶¶ 8, 12), highlighting that RCW 29A.24.091(4) does not specify or limit the

time period during which signatures must be gathered.[7] In other words, Petitioner was not actually restricted to only the wintry months of early 2026 but could also have collected signatures—and in fact did begin collecting them—before the year began. Petitioner's own actions strip any potential plausibility from his allegation that a would-be candidate utilizing the petition pathway must "conduct an effective signature gathering campaign during the months of **January through early May**" rather than "the warmer months of June, July, or August" (Dkt. No. 8 ¶ 23), and he offers no other reason that this pathway is not a genuinely accessible alternative to paying a filing fee. As such, Petitioner does not—and cannot—plead facts supporting his allegations that Defendant's actions "condition[ed] meaningful ballot access for county offices on personal wealth in violation of the equal protection guarantee of the Fourteenth Amendment" or the First Amendment. Dkt. No. 8 ¶ 3.

In short, the Court agrees with Defendant that Plaintiff does not plausibly state a claim that Washington's election laws, or Defendant's actions in following those laws, violated his right to ballot access under the First and Fourteenth Amendments. The Motion to Dismiss is therefore granted, and the FAC will be dismissed.

**A. Leave to Amend**

Courts typically allow pro se plaintiffs to amend their complaints in lieu of dismissal. *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). However, that is not the case where "it is absolutely clear that the deficiencies . . . could not be cured by amendment." *Id.* (quoting

---

[7] Likewise, RCW 29A.24.111, which sets forth the reasons filing fee petitions may be rejected, does not specify any specific period during which a signature must have been collected. Further, the Court takes judicial notice that the Washington State Filing Fee Petition available on King County's website does not require a signer to date the petition. King County, Washington State Filing Fee Petition, https://cdn.kingcounty.gov/-/media/king-county/depts/elections/for-candidates/pdfs/filing-fee-petition-form.pdf [https://perma.cc/B9GS-W7SK]; *see also* Fed. R. Evid. 201(2) (allowing courts to take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Daniels-Hall*, *v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010)) (taking judicial notice of information published on websites of school districts because they were government entities).

*Schucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988) (per curiam)).

Here, leave to amend the FAC would be futile for two reasons. First, it is evident that Plaintiff cannot plead facts that would establish that the petition pathway was inaccessible to him, and that he was therefore denied meaningful access to candidacy for his desired position. Second, the injunctive relief Plaintiff seeks is no longer possible, due in large part to Petitioner's delays in effectuating service on Defendant, his delay in moving for preliminary injunctive relief after his ex parte Motion for TRO was denied, and his failure to amend his complaint to comport with his evolving requests for relief as the election calendar progressed. Because the injunctive relief Petitioner seeks has become moot, declaratory relief is no longer appropriate, as there is not any further justiciable controversy between the Parties. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 867 (9th Cir. 2017) ("[T]he test for mootness applied to a claim for declaratory relief 'is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). This action is therefore moot.

Having found that leave to amend would be futile, the Court dismisses the FAC without leave to amend and dismisses this action in its entirety.

**B. Pending Motion Is Denied as Moot**

Because this action is dismissed in its entirety, Plaintiff's pending Motion for Preliminary Injunction (Dkt. No. 29) is denied as moot. Even if the Court reached the motion on its merits, it would be likely be required to deny the motion because a movant "cannot seek interim equitable relief of a nature it is not seeking in the final adjudication of its lawsuit." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 638 (9th Cir. 2015).

## IV. CONCLUSION

Accordingly, it is hereby ORDERED:

(1) Defendant's Motion to Dismiss (Dkt. No 39) is GRANTED.

(2) The First Amended Complaint (Dkt. No. 8) is DISMISSED WITH PREJUDICE.

(3) Plaintiff's pending Motion for Preliminary Injunction (Dkt. No. 29) is DENIED AS MOOT.

(4) Judgment will be entered separately in accordance with this Order.

Dated this 15th day of October, 2025.

Tana Lin
United States District Judge